NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| KARIM JOHNSON, | : | |
| Petitioner | : | Civ. No. 19-13355 (RMB) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |

RENÉE MARIE BUMB, United States District Judge

This matter comes before the Court upon Petitioner Karim Johnson's ("Johnson") Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Am. § 2255 Motion, Docket No. 3) and Respondent's answer in opposition to the motion. (Answer, Docket No. 11.) Johnson did not file a reply brief. For the reasons discussed below, this Court will deny grounds two, three and four of the amended § 2255 motion, and reserve on ground one, recusing for further proceedings with substitute counsel with assignment to a new District Judge.

## I.   BACKGROUND

On March 26, 2018, Johnson pleaded guilty in *U.S. v. Johnson*, Criminal Action No. 18-144 (RMB) (D.N.J.), to a one-count Information charging him with conspiracy to distribute and to possess with intent to distribute 28 grams or more of crack cocaine,

contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and in violation of 21 U.S.C. § 846.[1] (Plea Hearing Tr., Crim Docket No. 39.)   Johnson was represented by Stanley O. King, Esq. ("Attorney King"). The presentence investigation report ("PSR") prepared by the United States Probation Office ("USPO") showed that the Government developed evidence through, among other things, intercepted telephone calls, controlled drug purchases, and pole camera surveillance, that from October 2016 to June 2017, Johnson sold crack and furanyl fentanyl, marketed as heroin, to customers and a confidential source on and around the 1700 block of Filmore Street. (PSR ¶¶ 43-59.)[2] The Government uncovered further evidence that Johnson worked regular shifts selling drugs on that block for a drug trafficking organization. (*Id.*)

As part of the plea agreement, the parties agreed that Johnson joined the drug trafficking conspiracy, and that his relevant and readily foreseeable conduct involved 569.3 grams of crack and 141 grams of furanyl fentanyl. (PSR ¶ 69; and Plea Agreement, Schedule A, ¶ 3, Crim Docket No. 25 at 6.) Based on his prior convictions for controlled substance offenses, Johnson acknowledged that he might qualify as a career offender under U.S.S.G. § 4B1.1, which would increase his adjusted offense level to 31. (*Id.*, ¶ 4.) Johnson partially waived his right to appeal if his sentence was

---

[1] This Court will refer to the docket entries in *U.S. v. Johnson*, 18cr144 (RMB) (D.N.J.), available at www.pacer.gov, as "Crim. Docket No." Page references are to the page numbers assigned by the Court's case management electronic case filing system, CM-ECF.

[2] The PSR is confidential and is not filed on the public docket. *See United States v. Blanco*, 884 F.2d 1577, 1578 (3d Cir. 1989) ("There is a general presumption that the courts will not grant third parties access to the presentence reports of other individuals."))

within the Guidelines range based on an offense level of 31, except that he could challenge the court's determination of his criminal history category. (Plea Agreement, Schedule A, ¶ 9, Crim. Docket No. 25 at 7.) The waiver in the plea agreement did not prevent Johnson from bringing claims of ineffective assistance of counsel under § 2255. (*Id.* at 4.)   On March 26, 2018, this Court accepted Johnson's formal plea after a thorough colloquy.  (Plea Hearing Tr., Docket No. 39.)

At the sentencing hearing on July 25, 2018, the issue arose that the PSR contained a finding by Dr. Gerald Cooke that Johnson suffered intellectual impairments and was reading at a kindergarten level.  ("First Sent. Tr.", Crim. Docket No. 37 at 18-28.) The sentencing hearing was continued to obtain a supplemental expert report by Dr. Cooke, in light of Johnson's apparently inconsistent statement at during the plea colloquy that he read the plea documents. (*Id.*) When the sentencing hearing continued on November 27, 2018, Dr. Cooke testified about his intellectual and psychological testing and evaluation of Johnson. ("Second Sent. Tr.", Crim. Docket No. 38 at 8-63.) Attorney King and Johnson confirmed that Johnson fully understood the plea agreement, did not wish to withdraw the guilty plea, and wished to proceed with sentencing. (*Id.* at 73-76.)

This Court adopted the PSR and found that Johnson's offense level was 31 and his criminal history category was VI, which produced a recommended Guidelines range of 188 to 235 months. (*Id.* at 76-77.) After consideration of the relevant sentencing factors under 18 U.S.C. § 3553, this Court granted a five-level variance,

resulting in an offense level 26 and a Guidelines range of 120 to 150 months. ((Second Sent. Tr., Crim. Docket No. 38 at 137.) This Court imposed a prison sentence of 120 months, and varied upward to impose an eight-year term of supervised release. (*Id.* at 138.) Johnson did not appeal, but he filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 on June 3, 2019, and filed the present amended § 2255 motion on July 9, 2019. By order dated September 17, 2019, this Court directed Attorney King to provide relevant information to the Government regarding Johnson's § 2255 claims. (Order, Docket No. 8). Attorney King submitted a declaration pursuant to 28 U.S.C. § 1746, and the Government filed that declaration ("King Decl.", Exhibit J, Docket No. 11-10) as part of its answer to Johnson's § 2255 motion.

## II.   STATUS CONFERENCE HEARING

On June 4, 2021, this Court appointed counsel, pursuant to 18 U.S.C. § 3006A(a)(2)(B), to represent Petitioner in an evidentiary hearing. (Order, Docket No. 12.) After Johnson's first appointed counsel withdrew, Ira M. Slovin, Esq. was appointed on July 29, 2021. (Docket No. 16.) Attorney Slovin requested an in person case status conference because it appeared that the matter could be resolved without an evidentiary hearing.  (Letter, Docket No. 18.)  A status conference was held via Zoom on March 30, 2022. (Docket No. 22.) After this Court's colloquy with Johnson, which was procedural and hypothetical in nature, this Court recommended that counsel speak privately with Johnson. Counsel, however, inadvertently disclosed his

communication with Johnson on the merits of ground one of the amended § 2255 motion. This disclosure was solely with respect to ground one of the amended § 2255 motion.

Unfortunately, this Court believes that the inadvertent disclosure before this Court during the status conference renders it unable to provide an impartial hearing on this one claim. Pursuant to 28 U.S.C. § 455(a), this Court will recuse itself from determining solely ground one of the amended § 2255 motion, so that it might be heard by an impartial decision-maker who has not been exposed to a communication between the petitioner and his counsel on the substance of the claim. Further, this Court will docket only the minutes of the March 30, 2022 status conference and will maintain the transcript of the status conference in chambers, marked as confidential. This Court will order appointment of substitute counsel under 18 U.S.C. § 3006A(a)(2) for ground one of the amended § 2255 motion, and direct the case to be randomly assigned before a new District Judge. This Court will, however, address grounds two through four of the amended petition below without an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" and grounds two through four do not deal with the substance of the improvidently disclosed communication. 28 U.S.C. § 2255(b).

## III.   DISCUSSION

### A.   Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255(a). Courts should liberally construe *pro se* § 2255 motions. *United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010). To establish an ineffective assistance of counsel claim in violation the Sixth Amendment, a defendant must demonstrate that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to establish deficient performance, a defendant must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential … a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689-90 (internal quotations omitted). Accordingly, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-691.

To establish prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probably is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

"[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Lack of prejudice is independently sufficient to dismiss an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . .that course should be followed.") Although "sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because any amount of [additional] jail time has Sixth Amendment significance.'" *Lafler*, 566 U.S. 156, 165 (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)). To establish prejudice, the petitioner must establish the reasonable probability of a shorter sentence. *United States v. Smack*, 347 F.3d 533, 540 (3d Cir. 2003) (citing *Glover*, 531 U.S. 198

(2001) (holding that any reduction in sentence constitutes substantial prejudice for purposes of *Strickland* analysis)).

## B.     Analysis

### 1.     Ground Two: Guilty plea was not knowing, intelligent or voluntary

In ground two of his amended § 2255 motion, Johnson asserts that his guilty plea was not knowing, intelligent or voluntary because this Court did not ask him about the nature of the offense, his participation in the offense and did not explain the elements of conspiracy. (Am. § 2255 mot., Docket No. 3.) Johnson claims his counsel was ineffective for failing to raise this claim on appeal, but due to the partial appellate waiver in the plea agreement, this Court will construe his claim as alleging counsel failed to provide effective assistance during the plea colloquy. Respondent opposes relief based on Johnson's failure to allege prejudice. (Answer, Docket No. 11 at 9-14.) Even if Johnson had alleged that he would not have entered the guilty plea because he did not understand the offense charged, Respondent submits that Johnson had no viable defense at trial based on the evidence proffered against him, and the only way to reduce his sentencing exposure was to plead guilty. (*Id.* at 12.) Therefore, he cannot establish prejudice.

For the reasons discussed below, this Court finds that counsel was not ineffective by failing to object to the acceptance of Johnson's guilty plea because the plea colloquy establishes that Johnson's plea was knowingly, voluntarily and

intelligently made. During the plea colloquy, and again at the sentencing hearing on November 27, 2018, Johnson affirmed that he read with his counsel, understood, and discussed the charges in the Information to which he pleaded guilty. (Crim. No. 18-144, Plea Hearing Tr., Docket No. 39 at 5-7; Second Sent. Tr., Crim. Docket No. 38 at 73-76.) He affirmed that he had the opportunity to ask his counsel questions, and that he asked all of the questions that he had. (*Id.*)

During the plea colloquy, this Court set out the charges in the Information and discussed the potential penalties and application of the advisory sentencing guidelines with Johnson. (*Id.* at 16-26.) Prior to Johnson providing the factual basis for his guilty plea, Attorney King, to make clear that the conspiracy Johnson would plea to had existed for a period of time before he joined the conspiracy, raised the issue of how to phrase the question. (Crim. Action No. 18-144, Plea Hearing Tr., Docket No. 39 at 26-30.) After discussion with counsel for both parties, this Court posed the following questions to Johnson.

> THE COURT: … Mr. Johnson, on a date occurring in or after November 2016 through on or about June 13, 2017, did you knowingly conspire and agree with other individuals named in the information to distribute and to possess with intent to distribute 28 grams or more of cocaine base, in other words, crack cocaine?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you use the nickname "Chickie" during this time frame?
>
> THE DEFENDANT: Yes.

THE COURT: And did members of the charged conspiracy refer to you by that nickname?

THE DEFENDANT: Yes.

THE COURT: As part this drug conspiracy, did you knowingly sell crack cocaine to customers on and around the 1700 block of Filmore Street during the time period I just asked you about?

THE DEFENDANT: Yes.

THE COURT: And as part of this drug conspiracy, did you knowingly sell what you believed to be heroin to customers on or around the 1700 block of Filmore Street during the time period we just discussed?

THE DEFENDANT: Yes.

THE COURT: Do you agree that the substances sold as heroin by members of the conspiracy to confidential human sources working with the Federal Bureau of Investigation were in fact predominantly furanyl fentanyl, as determined by the laboratory testing conducted by the Drug Enforcement Administration?

THE DEFENDANT: Yes.

THE COURT: On April 21, 2017 did you sell quantities of crack cocaine and what you believed to be heroin to an FBI confidential human source in exchange for $300 during a meeting with the source on the 1700 block of South 6th Street, which is one block away from the 1700 block of Filmore Street?

THE DEFENDANT: Yes.

THE COURT: Did you profit from the sale of a controlled substance as part of this conspiracy?

THE DEFENDANT: Yes.

> THE COURT: Did you communicate with other members
> of the conspiracy over the telephone to further the
> conspiracy?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you use the cellular telephone number
> assigned (856) 481-5739 for this purpose?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you agree that the conspiracy and
> your relevant conduct in this conspiracy involved at least
> 569.3 grams of crack cocaine?

(Plea Hearing Tr., Docket No. 39 at 30-32.) Johnson then questioned the meaning of "relevant conduct" because he was charged with possession with intent to distribute only 28 grams of controlled substances. (*Id.* at 32-34.) The Court read the definition of "relevant conduct" from the U.S. Sentencing Guidelines, and Johnson stated that he understood, but he wanted to be sure that he was not pleading guilty to having been personally involved with more than 28 grams. (Plea Hearing Tr., Docket No. 39 at 32-34.) The Court gave Johnson time to confer with his attorney in private, and Johnson then stated on the record that all of his questions were answered and that he understood relevant conduct. (*Id.* at 34-35.)

The colloquy continued:

> THE COURT:  … Do you agree that the conspiracy and
> your relevant conduct involved at least 569.3 grams of
> crack cocaine?
>
> THE DEFENDANT: Yes.

11

THE COURT: Do you agree that the conspiracy and your relevant conduct involved at least 141 grams of furanyl fentanyl?

THE DEFENDANT: Yes.

THE COURT: Are you guilty of conspiring with others to engage in the distribution of and the possession with intent to distribute 28 grams or more of crack cocaine as charged in the information?

THE DEFENDANT: Yes.

THE COURT: And do you agree with all the stipulations contained in Schedule A of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Are there any questions at all that you have for me before I ask you to enter a formal plea?

THE DEFENDANT: No.

(Plea Hearing Tr., Docket No. 39 at 35-36.) After the Government entered its proffer, Johnson formally pleaded guilty to the Information. (*Id.* at 37.) At the second sentencing hearing, Mr. King read the plea documents to Johnson again and explained everything to him.  (Second Sent. Tr., Crim. Docket No. 38 at 73-76.) Johnson then confirmed that Mr. King had read the plea documents with him, answered all of his questions, and he wanted to plead guilty and continue with sentencing. (*Id.*)

Based on the above record, this Court explained the nature of the offense to Johnson, and Johnson explained his participation in the offense, to wit, joining a drug trafficking organization for financial gain, where his role was selling a particular

quantity and type of drugs at a specified time and place. Johnson alleges this Court failed to define conspiracy.  (Second Sent. Tr., Crim. Docket No. 38 at 73-76.) "In the context of a drug conspiracy prosecution brought under 21 U.S.C. § 846," the elements of conspiracy are:  "'1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal, which [the defendant] knowingly joined.'" *United States v. Claxton*, 685 F.3d 300, 305 (3d Cir. 2012) (quoting *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010)). The elements and meaning of conspiracy were apparent in the plea colloquy, when Johnson affirmed that he agreed with other individuals named in the Information to distribute and to possess with intent to distribute 28 grams or more of crack cocaine during a particular timeframe and at a particular location, that he profited from the sale, and that he communicated by telephone with other members of the conspiracy for the purpose of furthering the conspiracy.

Moreover, Johnson did not allege in his amended § 2255 motion what it is that he misunderstood about the elements of conspiracy, the nature of the offense and his participation in the offense, and how his misunderstanding caused him to plead guilty instead of going to trial.  In other words, he did not allege prejudice resulting from counsel's failure to object to a deficiency in the plea colloquy. Regardless of his failure to specifically allege prejudice, the Government's proffer of audio and video recordings on which Johnson communicated with co-conspirators about selling drugs during the time frame and at the location alleged in the Information, together with actual

recordings of his drug sales on that block, there is nothing in the record to suggest that Johnson would reasonably have gone to trial rather than plead guilty with further explanation of the charges during the plea colloquy. (*See* Government's proffer, Answer, Exhibits A-H, Docket Nos. 11-1 to 11-8.) Johnson's guilty plea afforded him a three-level downward adjustment for acceptance of responsibility that he would not have received if convicted at trial, a near certainty based on the abundance of evidence. *See, Evola v. Atty. Gen. of U.S.*, 190 F. App'x 171, 175 (3d Cir. 2006) (assuming ineffective assistance with respect to the defendant's guilty plea, holding that the petitioner failed to establish *Strickland* prejudice where there was overwhelming evidence of his guilt in the record.) Therefore, this Court denies the ineffective assistance of counsel claim in ground two of the amended § 2255 motion.

### 2.   Ground Three:  Counsel's deficient advice regarding application of the Sentencing Guidelines

In ground three of the amended § 2255 motion, Johnson alleges that his counsel provided misinformation about his sentencing exposure, and the sentencing proceedings establish that he was not informed of his sentencing exposure at trial. (Am. § 2255 motion, Docket No. 3 at 7.) Respondent opposes relief because Johnson has not alleged that but for this vague allegation of error, he would have proceeded to trial. (Answer, Docket No. 11 at 15-17.) Additionally, Respondent submits that even "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted." (*Id.* at  16, quoting *United*

*States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007)). Moreover, for purposes of this proceeding, Attorney King declared under oath that he had several discussions with Johnson regarding both the statutory penalties and Guidelines ranges that would apply based on various charges he might face if he pleaded guilty or went to trial. ("King Decl."), Docket No. 11-10, Exhibit J, ¶¶ 6, 7.))

Even if this Court were to assume that Attorney King misinformed Johnson about his sentencing exposure, this Court's colloquy cured any defects in counsel's advice. *See e.g., United States v. Delbridge*, 504 F. App'x 145, 150 (3d Cir. 2012) (holding that any inaccurate statements by defense counsel about sentencing were irrelevant because the defendant was advised of the maximum sentence, the Guidelines range applicable to his case, and the advisory nature of the Guidelines during the plea colloquy.) First, this Court described how the USPO's investigation into whether Johnson was a career offender might cause his adjusted offense level to jump as high as 37.  (Plea Hearing Tr., Docket No. 39 at 8.) Second, this Court advised Johnson that the statute that he was pleading guilty to carried a mandatory minimum five-year sentence and a statutory maximum of 40 years, and a 4-year minimum term of supervised release, up to lifetime supervised release. (*Id.* at 16, 18.) Third, this Court described the sentencing factors it would consider, the advisory nature of the Sentencing Guidelines, and the USPO's role in suggesting the appropriate adjusted offense level, including the consideration of relevant conduct. (*Id.* at 20-22.) Fourth, this Court advised Johnson that it was impossible to know what the Guidelines range

would be until the USPO completed the PSR. (*Id.* at 22.) Most significantly, this Court advised Johnson that he could not withdraw his guilty plea on the grounds that Attorney King's prediction of his sentence was inconsistent with the ultimate sentence imposed. (*Id.* at 23.)

At sentencing, after crediting Johnson's acceptance of responsibility, and varying downward for the prison term and upward for the term of supervised release based on the relevant sentencing factors, Johnson was sentenced to a 120-month term of imprisonment and an 8-year term of supervised release. There is nothing inconsistent with his Court's discussion of sentencing during the plea colloquy and Johnson's was ultimate sentence. Thus, Johnson's claim in ground three of the amended § 2255 motion fails to state a claim of ineffective assistance of counsel. *See e.g., Shedrick*, 493 F.3d at 299 (holding the defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion.")

### 3.    Ground Four:  Counsel was ineffective for failing to request a competency hearing

In ground four, Johnson claims that his counsel provided ineffective assistance because he failed to request a competency hearing after obtaining Johnson's intellectual and psychological evaluation, which suggested that Johnson had intellectual impairments and difficulty maintaining concentration and attention.

(Am. § 2255 motion, Docket No. 3 at 8.) Respondent submits that this claim is frivolous because Johnson does not claim that he was incompetent, the record does not support a claim of incompetency, and this Court determined there were no competency issues. (Answer, Docket No. 11 at 17-21.)

This Court will construe Johnson's claim as alleging that he was incompetent to plead guilty. The record, however, conclusively shows that Johnson is not entitled to relief on this claim. As discussed below, there is nothing in the record to support a claim of incompetency. In the plea colloquy, Johnson advised this Court that he was in the 11th grade in terms of his GED courses. (Plea Hearing Tr., Crim. Docket No. 39 at 4.) He affirmed that he had read and discussed the plea documents with counsel, that he understood this Court's explanations during the plea hearing, and he demonstrated his understanding by asking insightful questions about what might happen at sentencing. (Plea Hearing Tr., Crim. Docket No. 39 5-26, 30-36.)

When Johnson first appeared for sentencing on July 25, 2018, Attorney King stated, based on the forensic evaluation by Psychologist Gerald Cooke, that Johnson could read only at a kindergarten level. (First Sent. Tr., Docket No. 37 at 18.) This Court was concerned with the consequences of Dr. Cooke's opinion because someone reading at a kindergarten level could not read the plea documents. (*Id.* at 18-21.) Attorney King explained how he had assured himself that Johnson understood the plea documents by reading them together and repetitively explaining the documents, and added that he had never questioned Johnson's competence to

engage in the proceedings. (*Id.* at 21-22, 27.) This Court stated that Johnson's legal competence was not in question but expressed concern over his understanding of the plea agreement, based on his reading level and intellectual impairments described in Dr. Cooke's evaluation. (*Id.* at 22-23.) Therefore, this Court continued the sentencing hearing and requested that Dr. Cooke prepare a supplemental report on the issue of whether Johnson understood and accepted the terms of the plea agreement. (*Id.* at 22-23, 26.)

In his supplemental report, Dr. Cooke concluded:

> Despite his disabilities, it is my opinion that [Johnson] is competent to sufficiently understand the plea agreement when discussed with him verbally (clearly he is unable to read it), and then enter a plea. Also, he has been to court many times over the years and does have a basic understanding of the proceedings.

(Answer, Exhibit I, Docket No. 11-9.)

When the sentencing hearing continued on November 27, 2018, Dr. Cooke testified about his performance of and the results from Johnson's intellectual and psychological evaluation. (Second Sent. Tr., Crim. Docket No. 38 at 8-58.) At the conclusion of Dr. Cooke's testimony, this Court instructed Attorney King to confer with Johnson, read the plea agreement and Rule 11 form to him, and determine whether he fully understood. (*Id.* at 69-71.) After conferring with Johnson, Attorney King represented that Johnson understood the plea documents and proceedings and wished to go forward with sentencing. (*Id.* at 73.) Johnson then confirmed that

Attorney King had read the documents to him, that he fully comprehended the plea documents, and all of his questions were answered to his satisfaction. (*Id.* at 74-76.) This Court acknowledged that there never was a basis to question Johnson's understanding of the illegality and severity of his actions, in other words, his competence. (*Id.* at 133.)  Therefore, Johnson fails to state an ineffective assistance of counsel claim. *See e.g.*, *Taylor v. Horn*, 504 F.3d 416, 438 (3d Cir. 2007) (holding that counsel's interactions with the defendant, paired with two expert opinions acquired years earlier that the defendant was competent, "were sufficient for counsel to reasonably forego a competency hearing"); *see also Karenbauer v. Beard*, 390 F. App'x 73, 80 (3d Cir. 2010) ("Karenbauer has failed to show prejudice under *Strickland*'s second prong because he cannot demonstrate a reasonable probability that he would have been found incompetent if only his attorney had asked for a hearing.") This Court denies ground four of the amended § 2255 motion.

## IV.    CERTIFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons discussed above, jurists of reason would not find it debatable that Johnson failed to establish a Sixth Amendment ineffective assistance of counsel claim on grounds two, three and four of his amended § 2255 motion.

## V.    CONCLUSION

For the reasons discussed above, pursuant to 18 U.S.C. 3006A(a)(2)(B), this Court will appoint substitute counsel for ground one of the amended § 2255 motion and recuse from determining ground one. This Court denies grounds two, three and four of the amended § 2255 motion and denies a certificate of appealability.

An appropriate Order shall follow.

Dated: **September 21, 2022**

> s/Renée Marie Bumb
> RENÉE MARIE BUMB
> United States District Judge